This is State of Illinois, Ex Rel. Donald Pelter, M.D. versus Associated Anesthesiologists of Springfield, et al. And, Counsel, could you identify yourselves for the record, please? Yes, Your Honor. I'm Patrick Murphy for the appellant. I'm Dr. Pelter. All right. Thank you. Richard Nero on behalf of Associated Anesthesiologists. Thank you. Michael Sheehan on behalf of the C.B.I.S. Medical Management Professionals. Thank you. Russ Paulson on behalf of the A.B.I.S. Medical Management Professionals. All right. Thank you. And, Counsel, for the appellees, it's my understanding that you have agreed to the split of the appellees' time. Is that correct? Yes, Your Honor. All right. Mr. Murphy, are you ready to proceed? I am, Your Honor. May it please this Honorable Court and Counsel and my friends on the side of the defense, I'm going to be more explanatory than I am argumentative this morning. I think I can be of more use to the Court in that respect. And I'm going to start where I think this case is going to end, or at least the issue on which it will turn. And having read all of the briefs and thought this thing through, I believe it comes down to this. Is there a special rule for epidural anesthesia that trumps the general rule, insofar as we're concerned about submitting claims to Medicaid? Now, the general rule is that for an anesthesiologist to be paid, the anesthesiologist must submit their claim in minutes, and they must be actually present with their patient. Now, that is the general rule. Now, to help us get started, you have probably run across... What do you base that general rule on, Counselor? What's that? What do you base that general rule on? Exhibit 12 to the complaint, which is the most recent handbook for practitioners rendering medical services. If you look at the record, that's 756. And then on 757 is the general rule. And then on 758, which I guess would be about the third... Yeah, 758 is the special rule, allegedly, that controls epidural anesthesiology. And what part of that general rule says that the anesthesiologist must be present? Okay, it starts at A-221, and it says that when anesthesia is personally administered by an anesthesiologist who remains immediately available in the operating area during a surgical procedure, the anesthesiologist may submit charges. And then on down it talks specifically about intraoperative care. And that's very important. Anesthesia services are to be submitted only for the time period spent in the operating room, beginning with the anesthesiologist preparing for induction of anesthesia and ending when the patient may safely be placed under postoperative supervision. Do you agree that the Medicaid requirements say that they're supposed to put their time in as one specific period of time? Absolutely. Now, that is not a rule that applies across the board because if we go on in the same handbook, for instance, if you have an epidural anesthesia and it's followed by a general anesthesia, which sometimes happens, you have to bill for those separately, but again, separately in minutes. And regulations allow for up to 1,440 minutes of anesthesia for an epidural, correct? Actually, and you have to submit the actual record itself to get paid. So under your version, then, the anesthesiologist would have to be present that entire 1,440 minutes? Absolutely. Absolutely. What are the medical facility in Illinois bills in that fashion? Here's the thing. It depends. For instance, you're going to hear about the acronym, the CPT, which is the common protocol terminology, which has general application across the United States. Every ERISA plan adopts it in some form or the other, and some of those have different requirements. For instance, they may let you bill in a quarter of an hour. Some of them, like the state of Indiana, for instance, just bills by the procedure. They're tired of trying to record in minutes and quarters of an hour and the like. So the answer to your question is, in Illinois, only Medicare and Medicaid has that requirement. Yes, sir? Finish your thought, and then I have a separate question. Thank you. Well, I mean, a lot of us, when we look at this, there is a certain unfairness about that, isn't there? But the answer to that is no one has to participate in the Medicaid program, and that was going to be the next thing I was going to tell you. Under Exhibit 15, it shows what a claim is, how you fill it out with instructions, and I think it's Exhibit 3 tells you you have to have a written agreement with the state of Illinois, and then Exhibit 4 shows you what you're agreeing to, and you agree to do this.  You have to do it this way. It's a state-sponsored program. Mr. Murphy, just bookmark where you're at so you can get back to it. I want to back away from the specifics here and first ask you, what kind of action is this? This is a claim under the Illinois False Claims Act. Okay. What are the elements of a claim under the False Claims Act? Well, first of all, you have to submit a claim to the state of Illinois, which is almost identical to what you do under the federal, under the state. Not procedurally, just what are the elements of proof to prove a claim under the False Claims Act? That you knowingly submit a claim, knowingly. That is, you didn't accidentally do it. Can't blame it on your secretary. I mean, you knowingly submitted a claim. That's the first thing. And when you do it, when you do it, the claim is false. And what we said out here in very, very particular pleadings is, the doctors were saying that they spent this time and minutes with their patient, and in many times, it's exaggerated by as much as 7 or 800 percent. Okay. The trial court's dismissal was under 2615, right? Yes. Failed state of claim. What did the trial court find to be missing? Two things, I think. First, we used up a lot of trees arguing over what the custom and practice is. And I don't know if you had a chance to pull that out of the briefs. But the CPT manual itself, I think now in the fourth edition, talks about that you submit your time in accordance with the custom and practice of the area. Local custom and practice. Now, what they're talking about there, remember, the CPT manual is a manual of general application that ERISA plans use, private insurers use, they all use it. And in some locations, for instance, a state will say, well, you can submit your time in quarters of an hour, tenths of an hour, or what have you. It's basically the manual for uniform coding, right? Right. Common protocol terminology is the actual name of it. But in Illinois, there's only one way, and you have to submit it in minutes. That would be, if you look at it, I think that is Exhibit 15 to the second amended complaint, and the field is 24F. And you put the day, and you put the number of minutes. Well, counsel, I really feel that you hit the nail on the head when you started out by indicating the issue is whether or not there's a special rule for epidural procedures. Why doesn't that answer our question, and why doesn't that trump the general rule that you're talking about? Okay. If you could go to page 758 of the record, and I don't know if you have that immediately in front of you, but this is, I hate to just read a record, but could I read this to you? Do you have it in your briefs? We don't have the record up here. We have the briefs up here. Okay. Here's what it says. Continuous epidural anesthesia. And now this is after the general rule that you have to be with your patient. Well, I mean, we're looking at, they can, I think, am I recalling correctly, they can handle up to four patients? That's a whole different issue. Don't, don't, be careful. Well, I'm just wondering, how is that possible? That's a whole different issue. An anesthesiologist can choose, instead of billing for his time, to supervise or direct other CRNAs. But that's not in this case. That's not what, that is not what's happening here. Well, that same section, A221, says if the anesthesiologist is concurrently responsible for the care of more than one anesthetized patient, a claim may be submitted for each patient involved. So doesn't that indicate in some fashion that we're talking about being able to cover more than one patient? No. Okay. You can choose to bill that way if you wish. That is, you can, I think it's supervised up to four. But then for each patient you supervise, it's at a reduced rate. If my memory doesn't fail me, I think it's at about 30%. But that is not in this case. Okay, so let's get back to why this more specific language that refers to epidural procedures doesn't answer the question for us. Okay. The anesthesiologist is to submit one charge for the continuous epidural anesthesia services during a single operative session using the appropriate CPT code. Easy enough. Enter the appropriate physical status modifier and the total anesthesia administration time. Do not submit the major surgical procedure code. In other words, when you're doing this, we're not concerned whether you're getting an appendectomy or whatever it is. You've just got your total time here. And you only get to submit for the total time. Now, the argument for the defense is, well, this, you don't even have to be there. You can start induction and you can just leave. But here's the thing. As they say, and I think this really tells you what they're doing here. Under 221.2.4, when epidural anesthesia is started during labor but discontinued and then a general anesthetic administered, two charges should be submitted. The first charge should be for the appropriate epidural anesthesia and the epidural time in minutes. And the second code should be the appropriate general anesthesia CPT code with the general anesthesia time in minutes. So that's what they're saying. Okay. I don't understand how that bolsters your argument. Well, in both instances, even if it's right here in the same paragraph, they're saying that you treat the epidural anesthesia just like you do the general anesthesia. And we know the general anesthesia, the rule tells us, you have to be there or you don't get the charge for it. You just don't get the charge if you're not there. I mean, we've got a case here where the doctors come in. They send 30 minutes with the patients. They go home. I mean, this is in the pleadings. I'd like to go back kind of to the vein that Justice Harris was talking about is how we got here. Since this is a false claims case, the state first has the option of coming in on this case, right? Right. They can intervene if they want. As a matter of fact, they can intervene now. Under your allegations, massive Medicaid fraud is taking place throughout this entire state, correct? Yes. Because you state that as they frequently bill, 25 minutes actually gets billed at 341 minutes. Yes. 32 minutes gets billed at 263 minutes. Yes. So this is massive Medicaid fraud throughout the entire state. Yes. The Attorney General's Office has twice declined to participate in these proceedings. Why shouldn't that be given some weight in our assessment? Well, I don't think you will find a state case on point. There is a host of federal cases that say there's no intent at all. But the real reason is the Illinois Attorney General is broke. They can hardly staff their trials. They are bleeding lawyers because of it. The Illinois Attorney General rarely in this day and age will get in a false claims act case. The fact of the matter is the AG is not staffed and is not funded to do the job that it's charged with. That's the short answer. As part of your complaint, did you plead the application of the handbook for practitioners and the applicability of Chapter A200? Yes. That is Exhibit 12 to the second amended. Physically attached to the second amended. Physically attached. So if, just in terms of a pleading question here, if your assertions, your allegations that you've pled conflict with what you have attached as a written exhibit, don't the terms of the written document take precedence? Yes. Okay. So if we, I think Mr. Naref argued in his brief, that we need only look at the language of the handbook to dispose of this issue. If we were to find the language of the handbook to be clear in terms of the appropriate billing procedure, would that then govern our analysis of the 2615 motion over what was pled in the complaint? Well, yes. And that's where I said the case ends where it starts. If you believe, if you believe that the section that specifically references epidural anesthesia trumps the general rule that it exempts the doctor from physical presence, then they win. If you don't, we win. But there's no conflict in what we've alleged and what is here. What they're saying is they're reading the rule different than what I am. And I think a fair reading of all of this, particularly when they talk about intraoperative care, the necessary presence of the physician, the CPT manual, which this is all based on, which by the way is incorporated, it is incorporated by rule, that code is, is that's it. And the judge thought, and by the way I've said this before, very good judge, very good judge, listen. He thought that this custom and practice in the first instance had something to do with how you bill. In other words, well, if this is the general rule down here in Springfield, you know, that's good enough. Well, of course, there would be no end to the run on the public fisk if that is the rule. No end at all. No end at all. Is there any other questions? I don't see any. All right. Thank you. All right. Thank you, Mr. Murphy. You'll have time in rebuttal. Let's see, who's, Mr. Sheehan, are you next? All right. Well, good morning, Justices. Thank you for allowing me the time this morning to address you. I, too, think the discussion starts with whether or not there's a special rule or a general rule that applies here. And is all the defendants submitted? Yes, there is. And that rule starts with the general handbook. Counsel for Mr. Helfer began with the 2016 handbook. My client, MMP, was involved in the billing practices of AAS during the period of 2002 to 2008, according to the allegations in the complaint. Looking at the handbook for that period of time, there's specific language that controls how the billing of epidurals should be conducted by the anesthesiologist practice groups and their billing services. In Section A283.1, under the section for continuous epidural anesthesia, and recognized in plaintiff's own reply brief, it clearly states, when epidural anesthesia is started during labor and continued to delivery, submit one total charge that includes the total administration time. And then it goes on and it says, enter the total administration time in field 24F as the total number of minutes of service. And as Justice DeArmond pointed out, it further continues to say that if you go over 1,440 minutes, which is 24 hours, you then have to submit an anesthesia record to support that service. It's not logical to think that Illinois Public Aid expects doctors, anesthesiologists, to be on site with that patient for 24 hours during the continuous administration of the anesthesia. That would be a dereliction of responsibility of the state. You would be asking practitioners to be working around the clock, and that is not the intention. The intention is to bill in the total administration time. Plaintiffs made a telling admission to the trial court, and proceed with standing by that admission today, that anesthesiologists and their billing services throughout the state bill for total administration time. This is important because, one, the Attorney General has not entered this case, and I can't speak to whether or not their finances are the reason why. But another thing that could have occurred, because this action has been pending since 2010 in the federal court, then was brought in the state court, the Illinois Department of Public Aid could have made clear that for billing for continuous epidural services, they required face-to-face time. Counselor, this is a pleadings issue. We're only looking at the pleadings. So what you're talking about in terms of admissions, statements that might have been made during argument, that don't particularly guide us in determining whether the dismissal was appropriate here. We can only go by what was alleged and what's attached to the complaint. I agree, Your Honor, and I was just addressing the comments made earlier. Getting to the pleadings, the pleadings are pled in a conclusory fashion. Plaintiffs allege that the local custom is to bill in minutes. That is a conclusion of law and fact. As the trial court aptly said, they did not provide the who, what, where, and when. Who's custom? For what period of time? That period of time is important because we have a billing service provider that's in place from 2002 to 2008. If you look at the pleadings, they talk about, oh, the time that the doctor was with the patient was for 30 minutes and the bill was for the total time, which could be 300 minutes. All of those allegations relate to periods of time after 2008. They don't specifically allege any facts that there was billing above the amount of time that the physician, the anesthesiologist was with the patient during the period my client was there. The fact that they can't tell us these specific facts and they're resting on their conclusions of law and fact is why the trial court found it was deficient. The other aspect of the deficiency the trial court found was in the second sentence of the CPT code. Putting aside that we believe that the specific provisions of the handbook should control over the CPT general provisions, when you look at the second sentence, it talks about the time begins when the anesthesiologist inducts the anesthesia into the patient. And then the time ends when the anesthesiologist is no longer in the presence of that patient. And it goes on to say, that is when the patient may be safely placed under post-operative supervision. The trial court found that the omission of any facts that the patient was placed safely under post-operative supervision was dispositive of the issue and was a second reason for finding a deficiency on a 2-6-15 basis to dismiss the case. This is a false claims act claim. It's a fraud claim. All defendants submit that to plead fraud in the state of Illinois, you have to plead it with specificity and particularity. Dr. Helfer has not done so. It's these deficiencies that led to the dismissal. Plaintiff tries to shift the focus by saying the CPT code governs. In plaintiff's argument to this court, he's stated several occasions that the CPT code is just a general application. It comes back to, as we've stated in our briefs, as we've argued here today, that the special rule, the rule that applies to how epidurals should be billed, emanates from the handbook. I don't have anything further. Your Honor, so I don't have any questions. Thank you, counsel. Mr. Nero. Please, counsel. I'll be very brief. I don't think, perhaps the court has the experience, but the issue that I think is important here is, what is the CPT code? Well, the plaintiff's in their complaint state. CPT codes are a set of medical coding numbers utilized by healthcare providers to report to insurance companies and other medical payers for specific medical, surgical, or diagnostic procedures for the patient. Now, that's what this is. They're relying on the CPT code guidelines. In reality, the CPT codes are nothing but a book of procedures that they give a number to. That's what the whole CPT system is. And everybody uses these numbers because they don't want to have to have a description of what every procedure is. They use the numbers. And in front of each of the sections within the CPT code is a little bit of general overview. And in this, the anesthesia section, there's a little bit of general overview. And in there, there is a paragraph that says, time reporting. And it's just that, a sort of general overview. And in there, the first sentence says, time for anesthesia procedures may be reported as is customary in the local area. Now, if that sentence is to be given any meaning, then you have to look about how other providers are billing this. And that's why I think that the statement that counsel made at the end of the hearing in front of Judge Madonia, when he admitted that virtually everybody is now billing this way, is absolutely relevant to this very issue. And the court, the trial court, actually, the trial court asked that question. And the trial court, for a long period during these arguments, focused on what this local custom was. I don't think you get there. I think the CPT, the handbook regulations are sufficient. I don't think you even look at this. But if you're going to look at this, you've got to look at it in the context of what it really is. Is it some sort of treatise on exactly how anesthesia is to be billed? No. It's just general sort of guideline information. And that's the context that I think you have to examine it in. In addition, the second sentence, and there are only two sentences in this paragraph, the second talks about basically procedures during operations. In this country, anesthesiologists do lots of services. They are there in the operating room. They do provide epidurals. But they also do pain relief. They do numbers of other things. This paragraph deals with a specific situation when you're in an operating room. And that's all it's meant to cover. It's not meant to cover every single situation nationwide for everything an anesthesiologist could possibly do. It's clear here that we've got a handbook put out by the state of Illinois. They have special provisions for epidurals. That's what's governing it. That's the specific controls over the very general information in the CPT codes. And based on that, I believe that the failure of the pleadings to rely on the handbook and to rely on this one sentence out of one paragraph and the general information on the CPT codes is totally misplaced. Thank you. All right. Thank you. Counsel? May it please the Court. My name is Russ Koldrud. I represent Anesthesia Business Consultants, one of the defendants and appellees. In a Rule 615 dismissal, generally it's because the plaintiff either did not or has not stated a cause of action against the defendants. And even further than that, it's the defendant cannot state a cause of action based on what's in front of the court. And in this case, the relator cannot state a cause of action that these defendants submitted false claims to Illinois Medicaid. I went through to look at the record again last night, and as an illustration of that, it occurred to me that there's only one anesthesia service that's carved out and discussed and dealt with separately than all the others, and that's epidural. None other. All of the operative anesthesia services are here, and then there's epidural. In the complaint, the relator alleged that epidurals are not even scheduled for the physicians when they come in for their surgeries. They get called down to the OB to insert a catheter into the epidural area of the spine and then sort of turn on the analgesic in order to relieve pain for labor and delivery. It is not – earlier, Mr. Murphy said that the four surgeries going on at one time really didn't mean anything, because under the medical direction or medical supervision, there's two different charges. Well, it is important, because when this case began at federal court, the argument was that the labor epidural added a fifth operational procedure, which then meant that the anesthesiologist was not medically directing, but instead a lower-level and lower-charge supervisor. And the U.S. District Court said, no, it's not treated that way. So that is another indication of the carve-out. And if you look at the documents that were submitted with the complaint, that carve-out is dealt with in the relative value guide, which is on the record at 598. The handbook itself carves it out. So does the CPT code and the hospital's epidural record. It's a separate procedure. It's a separate way – it's a completely different service. And then finally, it's a service that's called epidural administration. You don't get the bill for each service that happens within that time. It's all one charge, one CPT code number, and the relative value of that service to the state of Illinois is set by the state of Illinois. I think the bottom line is the relator cannot state a cause of action here because there is none. That's all I have. Any questions? I don't see any. Thank you. Mr. Murphy, rebuttal? Yes. Thank you, Your Honor. Exhibit 12 of the complaint, okay? It tells us the first thing. Anesthesia services may be provided by an anesthesiologist and should be reported according to the anesthesia guidelines in the CPT, and they will be based on intraoperative time. So yes, this is a manual of general application, but the state of Illinois saw fit to pull it into their Medicaid plan. That's true. It doesn't make it any less enforceable. But we have more. We have the regulations that are also in Exhibit 12 that are attached that make specific what is required in this case, and they track the CPT code almost perfectly, the same language. Now, you just heard two things, and I just want you to think about this. Everyone knows that a physician can't stay with a patient for 24 hours. Agreed. Accordingly, he can't bill for 24 hours. If the patient requires anesthesiology during that time, somebody is going to have to come and relieve the doctor at some time, and then that doctor can bill for that. Still, you can't bill more than the actual time, but you can't bill for when you're not there. So that should not lead us astray. Now, the third point. I don't think this is a problem, but the federal court case is really not before this case. We did not state a claim in the federal district court for a violation of the Federal False Claims Act case under Medicare. Different scheme, different requirements. For what it's worth, the federal district judge said there very well may be a false claim under the state statute, but that judge was happy to exercise that order that every federal judge loves. Remanded for want of subject matter jurisdiction. Jurisdiction declined. Let the state court fool with it and go on. That is what happened there. These carve-outs that you just heard an argument about, that is when the state Medicaid is going to make an adjustment for what Medicare has paid for and how they're going to make those adjustments. It has absolutely nothing to do with this case. So this case, and I don't back down from it, this case will end when you carefully read the regulation. And by the way, I've been back through it. I believe the other handbooks are attached for all relevant periods of time. The language is almost identical all the way through, so there won't be a difference between the 208, 206, and then the current. Are there any questions that I could answer? Thank you for hearing our case. Thank you, Mr. Murphy. Thank you all. The case will be taken under advisement and a written decision shall issue.